## IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **KEVIN CARTER**, <br><br> *Plaintiff*, <br><br> v. <br><br> **DIVIDEND, A DIVISION OF FIFTH THIRD BANK, NATIONAL ASSOCIATION**, <br><br> *Defendant*. | Civil Action No. 1:24-CV-00832-TWT |

## FIRST AMENDED COMPLAINT

COMES NOW, KEVIN CARTER, Plaintiff, by and through the undersigned counsel, and hereby files this First Amended Complaint to correct a misnomer in the name of the defendant.[1] Mr. Carter has obtained the written consent of the opposing party for the filing of this amendment pursuant to Federal Rule of Civil Procedure 15(a)(2). An e-mail reflecting this written consent is attached to the First Amended Complaint as Exhibit 1.

### THE PARTIES

1.      Plaintiff Kevin Carter is a resident of Cobb County, Georgia.

---

[1] The Verified Complaint for Damages named Dividend Solar Finance LLC as the sole defendant whereas it should have been named Dividend, a Division of Fifth Third Bank, National Association.

2.     Defendant Dividend, a Division of Fifth Third Bank, National Association (hereinafter "Dividend") is a national banking association organized and existing under the laws of the State of Ohio. Dividend is registered to do business in the State of Georgia as a foreign profit corporation. Its registered agent for service of process is 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

3.     Dividend was previously known as Dividend Solar Finance LLC. At all times relevant to this dispute, Dividend Solar Finance LLC was a limited liability company organized and existing under the laws of the State of Delaware. Further, at all times relevant to this dispute, Dividend Solar Finance LLC was registered to do business in the State of Georgia as a foreign limited liability company.

### JURISDICTION AND VENUE

4.     This is a civil action for damages. As such, this Court has subject matter jurisdiction pursuant to Ga. Const. Art. VI, § IV, Para. 1.

5.     Dividend is registered to do business in Georgia as a foreign profit corporation and committed the tortious acts at issue in this Verified Complaint for Damages in Georgia. Moreover, Dividend transacts business in Georgia, derives substantial revenue from financing services provided in Georgia, and owns, uses, and possesses real property in Georgia. As such, this Court has personal jurisdiction over Dividend.

6.    The causes of action arising out of the wrongs and injuries done to Mr. Carter that are at issue in this Verified Complaint for Damages originated in Cobb County, Georgia. As such, venue in this Court is proper pursuant to O.C.G.A. §§ 9-10-93, 14-11-1108, and 14-2-510.

## FACUTAL ALLEGATIONS

### Mr. Carter's Experience

7.    Mr. Carter is a Georgia consumer who purchased a solar energy system from Power Home Solar, LLC (hereinafter "Pink Energy") on April 3, 2022, after speaking with one of its salespeople regarding the benefits of having such a system on his home.[2]

8.    Prior to Mr. Carter making the decision to purchase a solar energy system, the salesperson represented to him that his power bill would be almost completely eliminated if he installed a solar energy system on his home, that he would not have to pay anything for the first year because he was going to be receiving a rebate from Pink Energy, and that he was going to receive substantial tax credits from the government that would offset much of the costs.[3] Based on these

---

[2] Power Home Solar, LLC rebranded as "Pink Energy" on April 22, 2022. Throughout this Verified Complaint for Damages, Power Home Solar, LLC will be referred to as "Pink Energy."

[3] This salesperson was acting as an agent of Dividend Solar Finance during the course of this sales presentation, and Dividend Solar Finance is independently liable for the false and misleading representations that this salesperson made to Mr. Carter as described in further detail below insofar as he would not have entered into a

representations, Mr. Carter made the decision to purchase a solar energy system from Pink Energy and to finance his purchase of this system through Dividend.

9.     Mr. Carter agreed to pay Pink Energy $77,999.00 for the solar energy system. This price included the purchase of the solar energy system itself and the necessary installation. The installation was to be performed in a professional and workmanlike manner and in compliance with applicable building codes and other applicable laws.

10.    Pink Energy provided Mr. Carter various warranties as part of his purchase and installation of the solar energy system. Specifically, Pink Energy warranted that the solar energy system would be installed in a good workmanlike manner, installed in a manner that was compliant with all applicable governmental laws, regulations, and requirements, and free from defects in workmanship for a period of five years following the completion of the installation.

11.    As discussed above, Mr. Carter agreed to finance his purchase of the solar energy system through Dividend. Specifically, Mr. Carter agreed to pay Dividend monthly payments of varying amounts for a period of twenty-five years at an interest rate of 2.99%. In total, Mr. Carter agreed to pay Dividend $111,588.91 over the life of the financing agreement.

---

financing agreement with Dividend Solar Finance but for these false and misleading representations.

12.     Pink Energy installed the system shortly after Mr. Carter signed the contract for its purchase, and Mr. Carter began having problems almost immediately upon the installation of the solar energy system.

13.     First, Mr. Carter realized none of the promised benefits of the solar energy system. The power was turned on for the solar energy system in August 2022, and Mr. Carter noticed that the system was not producing much (if any) power at that time. Pink Energy took no actions to remedy these problems prior to filing for bankruptcy. In March 2023, the solar energy system began displaying error messages on its inverter that prevented the system from functioning properly. Moreover, the solar energy system's battery back up is nonfunctional and is not storing any energy.

14.     Second, Pink Energy never paid Mr. Carter the promised incentive payments that were built into the contract. The contract provided that Mr. Carter was to receive an incentive payment of $3,341.76 from Pink Energy, which was designed to pay for his first twelve months of financing payments to Dividend. Pink Energy ultimately filed for bankruptcy before it paid these sums to Mr. Carter.

15.     Third, Pink Energy installed the system in a negligent manner insofar as a cable that runs from the solar panels is too close and/or crosses the gas line. This poses a substantial risk to Mr. Carter and needs to be relocated.

16.     Pink Energy filed for bankruptcy on October 7, 2022, and Mr. Carter is presently stuck paying Dividend for a system from which he is getting little to no benefit. In total, Mr. Carter has made hundreds of dollars in payments to Dividend over the past couple of years. Dividend has offered Mr. Carter no relief in light of the problems that he is experiencing with Pink Energy and is content to continue enriching itself at his expense.

Broader Problems with Pink Energy

17.     Mr. Carter is not the only consumer that has been harmed by Pink Energy. Rather, thousands of consumers across the United States are in the same exact boat as Mr. Carter and have been victimized by Pink Energy and the legions of financing companies, such as Dividend, with which it has worked.

18.     Complaints about Pink Energy and its anti-consumer practices have been extremely widespread and began several years before it ultimately filed for bankruptcy on October 7, 2022.

19.     On information and belief, the re-branding of Power Home Solar, LLC as Pink Energy was substantially motivated by its desire to leave behind the anti-consumer reputation that it had developed by adopting a new trade name.

20.     The problems that consumers had been having with Pink Energy for years were highlighted extensively in two complaints that were filed against the company by the State of Ohio and the State of Missouri on behalf of aggrieved

consumers. These complaints detailed the widespread anti-consumer that Pink Energy had been engaged in throughout Ohio and Missouri over the course of several years.

21.    As explained in the complaint filed by the State of Missouri, Pink Energy "has made misrepresentations to Missouri consumers about its residential solar energy generation systems, including about the amount of energy the systems generate and that the systems will be properly installed and actually be able to function as intended. Contrary to [Pink Energy's] representations, its systems often do not work at all, much less work as well as [Pink Energy] represented. [Pink Energy] thus has left consumers on the hook for systems that cost tens of thousands of dollars but do not actually generate the electricity [Pink Energy] promised they would. [Pink Energy] also knew, but failed to disclose, that its systems contain a defective component that has the potential to cause consumers' homes to catch fire. [Pink Energy] has had ample opportunity to correct these deficiencies, but consistently has refused to do so."

22.    Notwithstanding these widespread complaints regarding Pink Energy's anti-consumer practices, Dividend has stood by Pink Energy and has failed to take any action to remedy the situations that any of its customers have now found themselves in light of the bankruptcy, including Mr. Carter.

23.     State attorneys general in Kentucky, North Carolina, Illinois, Indiana, Michigan, Pennsylvania, South Carolina, Tennessee, and Virginia contacted Dividend and other financing companies used by Pink Energy to urge them to take certain actions to assist its consumers, including, but not limited to, suspending loan payment obligations and the accrual of interest for consumers whose solar energy systems were not operational or operating properly, and that they conduct individual investigations into a consumer's complaints. Dividend took no such action with regard to Mr. Carter.

<u>The Relationship Between Pink Energy and Dividend</u>

24.     As explained above, Dividend has been content to enrich itself at the expense of aggrieved consumers throughout the United States, including Mr. Carter, and has not displayed the slightest concern for the situations in which its customers now find themselves post-bankruptcy. Dividend has taken the position that the complaints of such consumers are properly directed at Pink Energy—which no longer exists—and that Dividend bears no liability to its customers for any wrongful conduct of Pink Energy. This position is misguided.

25.     Importantly, at the time that Pink Energy's salespeople were deployed throughout the United States to sell solar energy systems, they were simultaneously pitching the financing services of companies, such as Dividend, and were acting as agents of Dividend during the course of such activities.

26.    These Pink Energy sales pitches were largely based on false and misleading representations regarding the capabilities of its solar energy systems. And such false and misleading representations were part of the basic business model on which Pink Energy built its business.

27.    On information and belief, the relationship between Pink Energy and Dividend incentivized such false and misleading representations to the consumer. Specifically, on information and belief, Dividend provided substantial financial incentives to Pink Energy for each solar energy system for which it arranged financing through Dividend.

28.    Because the sales pitches generally—and the sales pitch to Mr. Carter specifically—were made by salespeople acting as agents of Pink Energy ***and Dividend*** in pitching the solar energy systems and accompanying financing, Dividend is liable to Mr. Carter for the false and misleading representations that were made during the course of this sales pitch.

29.    The contract between Dividend and Mr. Carter also makes clear that Dividend is liable to him for the wrongful conduct of Pink Energy in relation to the underlying transaction. The financing agreement includes the following language to this point, which is bolded and in all-caps:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE**

**PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

30.     This is called the "FTC Holder Rule." The FTC Holder Rule is codified at 16 C.F.R. § 433.2. The Federal Trade Commission has explained the Rule's operation in a 2012 advisory opinion: "A creditor or assignee of the contract is . . . subject to all claims or defenses that the consumer could assert against the seller."[4] As such, "the plain language of the Rule permits a consumer to assert a seller's misconduct (1) to defend against a creditor's lawsuit for amounts owed under the contract and/or (2) to maintain a claim against the creditor for a refund of money the consumer has already paid under the contract (i.e., an affirmative recovery)."[5]

31.     "The Federal Trade Commission (FTC) promulgated the Holder Rule in 1975 in response to rapid growth in consumer installment debt in the United States."[6] "Before the Holder Rule, a third party who purchased a consumer's

---

[4] FTC Advisory Opn. 2 (May 3, 2012), https://www.ftc.gov/system/files/documents/advisory_opinions/16-c.f.r.part-433-federal-trade-commission-trade-regulation-rule-concerning-preservation-consumers-claims/120510advisoryopinionholderrule.pdf.

[5] *Id.*

[6] *Pulliam v. HNL Auto. Inc.*, 13 Cal. 5th 127, 133, 293 Cal. Rptr. 3d 649, 509 P.3d 998 (2022) (citing Promulgation of Trade Regulation Rule and Statement of Basis and Purpose, 40 Fed.Reg. 53506–53507 (Nov. 18, 1975); Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 Fed.Reg. 20022 (May 14, 1976)).

promissory note did so 'free and clear of any claim or grievance that the consumer may have with respect to the seller.'"[7]

32.     Because of the adoption of the FTC Holder Rule, this is no longer the law. "The FTC recognized that the application of the holder in due course rule to consumer credit sales was 'anomalous' because consumers are not 'in an equivalent position [to commercial entities] to vindicate their rights against a payee.'"[8] This decision to shift the risk to the lender was made because, "[b]etween an innocent consumer, whose dealings with an unreliable seller are, at most, episodic, and a finance institution qualifying as 'a holder in due course,' the financer is in a better position both to protect itself and to assume the risk of a seller's reliability."[9]

33.     As such, Dividend is liable to Mr. Carter for each claim that he could have brought against Pink Energy in connection with its wrongful actions.

34.     At least thirty days prior to filing this Verified Complaint for Damages, Mr. Carter sent Dividend a written demand for relief that reasonably described the unfair and deceptive acts and practices relied upon by him and the injuries that he suffered as a result of its actions and the actions of Pink Energy.

---

[7] *Id.*
[8] *Id.* at 134.
[9] *Id.*

35.     Dividend's actions with regard to Mr. Carter were done in bad faith and caused him unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11.

## FIRST CAUSE OF ACTION—FRAUD

36.     Pink Energy represented to Mr. Carter that his power bill would be almost completely eliminated if he installed a solar energy system on his home, that he would not have to pay anything for the first year because he was going to be receiving a rebate from Pink Energy, and that he was going to receive substantial tax credits from the government that would offset much of the costs. These representations were false or substantially misleading at all times.

37.     Pink Energy knew or should have known that the above representations were false or substantially misleading at the time that they were made to Mr. Carter given that it was routinely failing to comply with its warranty obligations to its existing customers and had received widespread reports from thousands of its existing customers around the country that the solar energy systems that they had purchased from Pink Energy were not functioning properly, and that various components of such systems were defective and otherwise not of good quality. Further, Pink Energy knew or should have known that it was in dire financial straits at the time that it sold the solar energy system to Mr. Carter, and that there was a substantial risk that he would not receive a rebate from Pink Energy.

38.     Pink Energy made the above representations to Mr. Carter to induce him to purchase and install a solar energy system—and to finance the purchase and installation of this system through Dividend—and knew that Mr. Carter would not have purchased and financed such a system had they known that the above representations were false or substantially misleading. Pink Energy was acting as an agent of Dividend at the time that the above representations were made to Mr. Carter.

39.     Mr. Carter reasonably relied on the representations of Pink Energy in making the decision to purchase and install the solar energy system—and to finance the purchase and installation of this system through Dividend.

40.     Mr. Carter has been damaged by Pink Energy's fraudulent actions as set forth above.

41.     Dividend is directly liable to Mr. Carter for the fraudulent actions of its agent in inducing him to enter into a financing agreement with it on the basis of numerous false and misleading representations.

42.     Under the FTC Holder Rule, Dividend is also subject to all claims that Mr. Carter could assert against Pink Energy, including his fraud claim.

## SECOND CAUSE OF ACTION—NEGLIGENCE

43.     Pink Energy owed Mr. Carter a duty of reasonable care in installing the solar energy system.

44.     Pink Energy breached the duty that it owed to Mr. Carter by installing the solar energy system in a manner that poses a substantial risk to him and his home insofar as one of the cables running from the system is close to and/or crosses his home's gas line. This cable will need to be relocated as a result.

45.     The damage (and threat) to Mr. Carter and his home would not have occurred but for Pink Energy's negligent installation of the solar energy system, and Pink Energy's negligent installation of the solar energy system was a natural and probable cause of the damage (and threat) to Mr. Carter and his home.

46.     Mr. Carter has suffered substantial damage as a result of Pink Energy's negligent installation of the solar energy system as set forth above.

47.     Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his negligence claim.

**THIRD CAUSE OF ACTION—BREACH OF CONTRACT**

48.     Mr. Carter entered into a contract with Pink Energy for the purchase and installation of a solar energy system.

49.     Under the contract, Mr. Carter was obligated to pay Pink Energy $77,999.00 for the purchase and installation of the solar energy system (among other things).

50.     Under the contract, Pink Energy was obligated to provide the solar energy system and install it in a professional and workmanlike manner and in compliance with all local requirements for building permits and inspections.

51.     Under the contract, Pink Energy warranted that the solar energy system would be installed in a good workmanlike manner, installed in a manner that was compliant with all applicable governmental laws, regulations, and requirements, and free from defects in workmanship for a period of five years following the completion of the installation.

52.     Under the contract, Pink Energy was obligated to provide Mr. Carter a rebate of $3,341.76.

53.     Mr. Carter paid Pink Energy $77,999.00 for the purchase and installation of the solar energy system and otherwise complied with all of his obligations under the contract.

54.     Pink Energy breached the contract by failing to perform the installation of the solar energy system in a professional and workmanlike manner and by failing to repair the defects in its workmanship when their existence became apparent and were repeatedly reported by Mr. Carter.

55.     Pink Energy further breached the contract by failing to provide Mr. Carter the rebate of $3,341.76.

56.     Mr. Carter has suffered substantial damage as a result of Pink Energy's breach of contract as set forth above.

57.     Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his breach of contract claim.

## FOURTH CAUSE OF ACTION—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

58.     Under Georgia law, an implied covenant of good faith and fair dealing is implied in every contract.

59.     The implied covenant of good faith and fair dealing is violated by a party if the party exercises a judgment conferred by the express terms of a contract in a manner that evades the spirit of the contract and denies the other party of the expected benefit of the agreement.

60.     The implied covenant of good faith and fair dealing is designed to prevent opportunistic behavior on the part of one party to the detriment of the other party.

61.     An implied covenant of good faith and fair dealing arose in the contract between Mr. Carter and Pink Energy.

62.     Pink Energy violated the implied covenant of good faith and fair dealing through its actions in providing Mr. Carter a solar energy system that was incapable of meaningfully producing solar energy and subsequently refusing to take any of the necessary actions to rectify the situation.

16

63.    Mr. Carter has suffered substantial damage as a result of Pink Energy's breach of the implied duty of good faith and fair dealing as set forth above.

64.    Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his claim for breach of the implied duty of good faith and fair dealing.

**FIFTH CAUSE OF ACTION—BREACH OF EXPRESS WARRANTY**

65.    Pink Energy's obligations in its contract with Mr. Carter constitute express warranties under Georgia law.[10] Specifically, the contract included representations from Pink Energy that the solar energy system would be installed in a good workmanlike manner, installed in a manner that was compliant with all applicable governmental laws, regulations, and requirements, and free from defects in workmanship for a period of five years following the completion of the installation.

66.    Pink Energy's representations to Mr. Carter that his power bill would be almost completely eliminated if he installed a solar energy system on his home, that he would not have to pay anything for the first year because he was going to be receiving a rebate from Pink Energy, and that he was going to receive substantial tax

---

[10] O.C.G.A. § 11-2-313.

credits from the government that would offset much of the costs also constituted express warranties under Georgia law.[11]

67.    Mr. Carter reasonably relied on Pink Energy's express warranties in purchasing the solar energy system, and such representations were part of the basis of Mr. Carter's bargain with Pink Energy.

68.    Mr. Carter promptly and repeatedly notified Pink Energy of the problems that he was experiencing with his solar energy system, provided Pink Energy with a reasonable opportunity to satisfy its obligations under these express warranties, and repeatedly notified Pink Energy of its breaches of such warranties. Nonetheless, Pink Energy has entirely failed to remedy any such breaches as of the date of this Verified Complaint for Damages.

69.    Mr. Carter has suffered substantial damage as a result of Pink Energy's breach of express warranty as set forth above.

70.    Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his claim for breach of express warranty.

---

[11] *Id.*

## SIXTH CAUSE OF ACTION—BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

71.     Under Georgia law, an implied warranty of merchantability arises in a contract for the sale of goods "if the seller is a merchant with respect to goods of that kind."[12]

72.     Under the implied warranty of merchantability, the seller warrants that the goods being sold are merchantable, which means (in part) that the goods "[p]ass without objection in the trade under the contract description" and "[a]re fit for the ordinary purposes for which such goods are used."[13]

73.     Pink Energy is in the business of selling solar energy systems, so it is a merchant for the purposes of the implied warranty of merchantability.

74.     Pink Energy could not disclaim the implied warranty of merchantability insofar as it provided Mr. Carter a written warranty for the solar energy system. As such, Pink Energy sold the solar energy system with an implied warranty of merchantability.

75.     The ability to meaningfully produce solar energy is an ordinary purpose for which solar energy systems are used, and a solar energy system that is incapable of meaningfully producing solar energy would not pass without objection in the trade under the contract description.

---

[12] O.C.G.A. s 11-2-314(1).
[13] O.C.G.A. § 11-2-314(2)(a), (c).

76.     The solar energy system that Pink Energy sold Mr. Carter is not fit for this ordinary purpose and does not pass without objection in the trade under the contract description insofar as it has been incapable of meaningfully producing solar energy since its installation.

77.     Mr. Carter promptly and repeatedly notified Pink Energy of its breach of the implied warranty of merchantability and provided Pink Energy with a reasonable opportunity to satisfy its obligations under this warranty. Nonetheless, Pink Energy has entirely failed to remedy any such breach as of the date of this Verified Complaint for Damages.

78.     Mr. Carter has suffered substantial injury as set forth above as a result of Pink Energy's breach of the implied warranty of merchantability.

79.     Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his claim for breach of the implied warranty of merchantability.

**SEVENTH CAUSE OF ACTION—VIOLATION OF THE
MAGNUSON-MOSS WARRANTY ACT**

80.     The solar energy system that Mr. Carter purchased is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act because it is

"tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes."[14]

81.    Mr. Carter is a "consumer" within the meaning of the Magnuson-Moss Warranty Act because he is a "buyer . . . of [a] consumer product."[15]

82.    Pink Energy is a "supplier" within the meaning of the Magnuson-Moss Warranty Act because it is "engaged in the business of making a consumer product directly or indirectly available to consumers."[16]

83.    Pink Energy is a "warrantor" within the meaning of the Magnuson-Moss Warranty Act because it is a supplier who "gives or offers a written warranty."[17]

84.    The warranty that Pink Energy provided Mr. Carter is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act because it is an "undertaking in writing in connection with the sale by a supplier of a commercial product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking," and because it is "part of the basis of the bargain between

---

[14] 15 U.S.C. § 2301(1).
[15] 15 U.S.C. § 2301(3).
[16] 15 U.S.C. § 2301(4).
[17] 15 U.S.C. § 2301(5).

[Pink Energy] and [Mr. Carter] for purposes other than the resale" of the solar energy system.[18]

85.    Pink Energy gave Mr. Carter a written warranty and an implied warranty of merchantability as part of his purchase of the solar energy system.

86.    Pink Energy breached the written warranty and the implied warranty of merchantability as set forth above and consequently violated the Magnuson-Moss Warranty Act,[19] which entitles Mr. Carter to recover his attorneys' fees and costs, as well as any other damages that are recoverable.[20]

87.    Under the FTC Holder Rule, Dividend is subject to all claims that Mr. Carter could assert against Pink Energy, including his claim for violation of the Magnuson-Moss Warranty Act.

## EIGHTH CAUSE OF ACTION—VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

88.    The Georgia Legislature enacted the GFBPA to "protect consumers and legitimate business enterprises from unfair or deceptive acts in the conduct of any trade or commerce in part or wholly in the state."[21]

---

[18] 15 U.S.C. § 2301(6)(B).
[19] 15 U.S.C. § 2310(d)(1).
[20] 15 U.S.C. § 2310(d)(2)
[21] O.C.G.A. § 10-1-391(a).

89.     The GFBPA broadly outlaws "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."[22]

90.     Mr. Carter is a Georgia consumer who falls within the protections of the Georgia Fair Business Practices Act, and Pink Energy and Dividend are businesses whose actions the Georgia Legislature intended to be regulated by this statute insofar as Pink Energy and Dividend targeted their businesses as customers located there.

91.     Pink Energy and Dividend violated the Georgia Fair Business Practices Act insofar it made various false and misleading representations to Mr. Carter regarding the solar panel system and falsely advertised the benefits of such a system to induce him to purchase a solar energy system from Pink Energy and finance this purchase through Dividend. Pink Energy further violated the Georgia Fair Business Practices Act by failing to comply with the warranties it gave Mr. Carter among other unfair and deceptive acts and practices that are described in more detail above.

92.     Pink Energy and Dividend engaged in these unfair and deceptive acts and practices during a course of conduct involving trade and commerce in Georgia and intended to engage in these practices to profit from Mr. Carter, as well as other consumers.

---

[22] O.C.G.A. § 10-1-393(a).

93.     Mr. Carter has suffered substantial injury as set forth above as a result of Pink Energy's and Dividend's violations of the Georgia Fair Business Practices Act.

94.     Dividend is directly liable to Mr. Crater for its actions in violation of the Georgia Fair Business Practices Act.

95.     Under the FTC Holder Rule, Dividend is also subject to all claims that Mr. Carter could assert against Pink Energy, including his claim for violation of the Georgia Fair Business Practices Act.

## PRAYER FOR RELIEF

Mr. Carter seeks the following relief from this Court:

A.      Refund of all funds that he has paid to Dividend;

B.      Rescission of his financing agreement with Dividend;

C.      Removal of any references to Dividend from his credit;

D.      Actual damages (including direct and consequential damages) in an amount to be determined at trial for the losses that he suffered as a result of Dividend's actions;

E.      Trebling of actual damages to punish and deter further wrongful conduct of Dividend pursuant to the GFBPA;

24

F.      Punitive   damages   calculated   to   be   sufficient   to   deter   the

willful, malicious,   fraudulent,   wanton,   and   oppressive   conduct   of   Dividend

in the future;

G.      His   reasonable   attorneys'   fees   pursuant   to   O.C.G.A.   § 13-6-11,

the   Magnuson-Moss   Warranty   Act,   the   Georgia   Fair   Business   Practices   Act,   and

other applicable provisions;

H.      His reasonable costs and expenses in bringing this action;

I.      Trial by jury; and

J.      Such additional relief as this Court deems proper.


This 5th day of April 2024.

                                        Respectfully Submitted,
                                        Attorney for Plaintiff:

                                        /s/ *Jarrett J. Faber*_____
                                        Jarrett J. Faber
                                        Georgia Bar No. 703608
                                        jarrett@kneuppercovey.com
                                        (404) 999-3239

Kneupper & Covey PC
11720 Amber Park Drive
Suite 160, PMB 1271
Alpharetta, Georgia 30009